UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SWEET GISELE, INC.,

                  Plaintiff,                          REPORT AND
                                                     RECOMMENDATION
      -against-                          17 CV 5170 (FB)(RML)

TRUE ROCK CEO, LLC, and JOHN DOES 1–10,

                  Defendants.
-----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated February 22, 2018, the Honorable Frederic Block, United States

District Judge, referred plaintiff's motion for default judgment to me for a report and

recommendation.  For the reasons explained below, I respectfully recommend that plaintiff's

motion be denied.

**BACKGROUND AND FACTS**

        Plaintiff Sweet Gisele, Inc. ("plaintiff") commenced this copyright infringement

action against True Rock CEO, LLC ("defendant" or "True Rock"), a domestic corporation

registered in New York, and John Does 1–10 on August 31, 2017.  (Complaint, dated Aug. 31,

2017 ("Compl."), Dkt. No. 1.)  Briefly, plaintiff alleges that defendants infringed on five of their

designs, all of which depict combinations of instantly-recognizable New York City landmarks

and catchphrases, by selling t-shirts "featuring a design which is identical, or substantially

similar to," those designs on Amazon.com and other retailers.  (See id. ¶¶ 13–15.)

        After True Rock failed to appear or respond, plaintiff moved for entry of default

pursuant to Federal Rule of Civil Procedure 55(a).  (Request for Certificate of Default, dated Oct.

30, 2017, Dkt. No. 10.)  Plaintiff filed an affidavit of service on December 1, 2017.  (Affidavit of

Service, dated Nov. 29, 2017, Dkt. No. 12.)  The Clerk noted True Rock's default on December

8, 2017.  (Clerk's Entry of Default, dated Dec. 8, 2017, Dkt. No. 13.)  On February 22, 2018, plaintiff moved for default judgment against True Rock, requesting a permanent injunction, statutory damages, and attorney's fees and costs.  (Motion for Default Judgment, dated Feb. 22, 2018, Dkt. No. 14; Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated Feb. 22, 2018 ("Pl.'s Mem."), Dkt. No. 14-1, at 5.)  Judge Block referred plaintiff's motion to me for a report and recommendation that same day.  (Order Referring Motion, dated Feb. 22, 2018.)

On April 24, 2018, I ordered plaintiff to submit additional briefing and documentation on several issues by May 18, 2018: (1) whether plaintiff actually owned the copyrights in question; (2) whether plaintiffs' copyrights were valid insofar as they demonstrated the requisite originality for copyright protection; and (3) whether defendant copied constituent elements of the work that are original.  On May 29, 2018, plaintiff requested an extension of time *nunc pro tunc*, which I granted, permitting plaintiff to file additional briefing through June 8, 2018.  (Order, dated May 30, 2018.)  Plaintiff did not file this briefing—which consists of a supplemental memorandum of law and an unsworn declaration from plaintiff's putative president, Lidor Cohen—until June 18, 2018, despite never seeking nor receiving an additional extension.  (See Supplemental Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated June 18, 2018 ("Supp. Mem."), Dkt. No. 19; Declaration of Lidor Cohen in Support of Motion for Default, filed June 18, 2018 ("Cohen Decl."), Dkt. No. 20.)  Defendants have not filed any opposition to this briefing, and nearly one and a half months have passed since their deadline to do so.

In this supplemental submission, plaintiff indicated that it had discovered that its pending applications for copyrights as to two of its designs (TBO95 and TBO99) needed to be

re-filed; it appears, therefore, that plaintiff has withdrawn its claims with respect to those two designs.  (See Supp. Mem. at 1 n.1; Cohen Decl. ¶¶ 12–17.)  The remaining designs in issue are registered under the names "New York Black and White Empire Liberty" (which consists of one design, also titled "TBO41") and "New York Souvenir Art Collection" (which comprises two designs, separately titled "TBO75"and "TBO86").[1]  The registered designs as attached to the complaint are labeled accordingly as follows:

---

[1] It appears that the registration certificate for this collection lists its name with a spelling error: "New York Souvnier [sic] Art Collection."  I will refer to it by its intended title, "New York Souvenir Art Collection," when necessary.



*Figure 1: New York Black and White Empire Liberty - TBO41*



*Figure 2: New York Souvenir Art Collection - TBO75*



*Figure 3: New York Souvenir Art Collection - TBO86*

The alleged infringing designs are as follows:



*Figure 4: From Exhibit C, design alleged to infringe TBO41*



**Figure 5: From Exhibit C, design alleged to infringe TBO75**



*Figure 6: From Exhibit C, design alleged to infringe TBO86*

## DISCUSSION

1. Legal Standard

A party's default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Grp., 973 F.2d 155, 158 (2d Cir. 1992).  However, a district court need not credit those allegations that are merely legal conclusions.  See Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas, 509 F. App'x 54, 57 (2d Cir. 2013); Gesualdi v. Ava Shypula Testing & Inspection, Inc., No. 12 CV 1873, 2014 WL 1399417, at *4 (E.D.N.Y. Apr. 10, 2014).  The court should grant plaintiff a default judgment only if its factual allegations "establish [defendant's] liability as a matter of law."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  The first element—ownership of a valid copyright—requires that the plaintiff sufficiently plead both that it owns the copyrights in question, and that the copyrights are valid.  The second element requires that the plaintiff specifically set out the manner in which defendant copied plaintiff's work.

2. Ownership of Copyrights

The Copyright Act provides that a person may become the owner of a copyright by authorship, by hiring another to create the work, or by conveyance.  See 17 U.S.C. § 201.  A conveyance of ownership is not valid unless it is "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  As the Second Circuit has explained:

10

> Although it may seem formalistic, the "writing requirement" is
> rooted in real policy concerns.  In the copyright context, the Ninth
> Circuit has explained that the Copyright Act's assignment-related
> writing requirement, 17 U.S.C. § 204(a), serves the ends of
> (1) ensuring that the owner of intellectual property will not assign
> it inadvertently; (2) forcing parties to determine the precise rights
> being transferred; and (3) enhancing predictability and certainty of
> ownership. . . . . A clear writing effecting an assignment signals to
> the parties and the world that the assign[ee] is the party that owns
> the mark and is authorized to exclude others from use.

Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 74 (2d Cir. 2013) (citing

Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990)).

Plaintiff has made several contradictory statements as to its ownership of the

copyrights at issue here.  At first, plaintiff's complaint described plaintiff as the "owner and

author" of the works.  (Compl. ¶ 10.)  The certificates of registration submitted with the

complaint, meanwhile, listed the works' *authors* as Josef Cohen and Lidor Cohen, and described

all the works as works made for hire.  (See Certificates of Registration, annexed to Compl. as Ex.

B., Dkt. No 1-2.)  I noted this discrepancy in my April 24, 2018 order and directed plaintiff to

clarify, explaining that "[w]hile plaintiff may have employed these individuals or have otherwise

purchased the copyrights from them, the court cannot make such assumptions without

evidentiary support."  (Order, dated Apr. 24, 2018, at 3.)

Plaintiff now claims that the works' actual author was a graphic designer, Shalom

Mallachi, and that Josef and Lidor Cohen "acquired the exclusive right" to the designs "by a

transfer agreement."  (Supp. Mem. at 1.)  Plaintiff has attached three alleged transfer agreements,

titled "Copyright Assignment Statement and Acknowledgement," which on their face appear to

have been signed by a person named Shalom Mallachi.  (See Copyright Assignment Statements,

dated Aug. 16, 2017, annexed as Ex. A to Supp. Mem., Dkt. No. 19-1.)  All of these agreements,

however, are dated August 16, 2017—i.e., fifteen days before the filing of this complaint.  (Id.)

11

The agreements, meanwhile, state that the assignments occurred in January 2009, August 2012, and December 2010.  (Id.)  As § 204(a) provides, unwritten assignments of copyright are not valid.  The timing of these written assignments, meanwhile, suggests that they may have been manufactured for the purpose of bringing this lawsuit.  Finally, other evidence in the supplemental submissions calls into question the veracity of the various claims of assignment here.  For example, Cohen's unsworn declaration (which was also signed by Josef Cohen, even though the declaration is written in the first person singular and states that only Lidor Cohen declares as follows) does not reference any prior assignment at all, but simply asserts that "Josef Cohen and I are owners of Sweet Gisele and have duly applied for copyright registration as the owners of" the designs.  (Cohen Decl. ¶ 6.)  In addition, there is a mismatch between the dates of publication listed on the certificates of registration and the alleged dates of assignment.  The copyright assignment statement for TBO41, for example, states that Mallachi assigned his rights to that work in January 2009, but the certificate of registration says the work's year of completion was 2010.  (Compare Copyright Assignment Statement for TBO41, annexed as Ex. A to Supp. Mem., dated Aug. 16, 2017, Dkt. No. 19-1, at 2, with Certificate of Registration for NY Black White Empire Liberty, dated Mar. 14, 2012, annexed as Ex. B. to Compl., Dkt. No. 1-2, at 2.)  Similarly, the copyright assignment statement for TBO75 states that Mallachi assigned his rights to that work in August 2012, but Lidor Cohen was issued a certificate of registration for the New York Souvenir Art Collection, which TBO75 is allegedly part of,[2] three months

---

[2] The certificate of registration that plaintiff claims covers both TBO75 and TBO86 does not actually state these alternative titles on its face.  (See Certificate of Registration for New York Souvenir Art Collection, dated May 4, 2012, annexed as Ex. B to Compl., Dkt. No. 1-2, at 4.)  While this also raises questions about the true scope of this certificate of registration, I am assuming for the purposes of this report and recommendation that the certificate does in fact cover these two designs, as plaintiffs repeatedly allege in their complaint and motion papers.  (See Compl. ¶ 10; Cohen Decl. ¶ 6.)

prior—on May 4, 2012.  (Compare Copyright Assignment Statement for TBO75, annexed as Ex.

A to Supp. Mem., dated Aug. 16, 2017, Dkt. No. 19-1, at 3, with Certificate of Registration for

New York Souvenir Art Collection, dated May 4, 2012, annexed as Ex. B to Compl., Dkt. No. 1-

2, at 4.)

   In a recent case in this district which also involved a default judgment, the court

found that a declaration "describing transfer of the copyrights in the underlying works from the

successors and heirs of Robert E. Howard to the plaintiffs" was "more than enough to satisfy the

ownership and registration elements" of a copyright claim.  Conan Props. Int'l LLC v. Ricardo

Jove Sanchez, No. 17 CV 162, 2018 WL 3869894, at *3 (E.D.N.Y. Aug. 15, 2018) (Block, J.).

That case is distinguishable, however, insofar as that declaration provided an extensive account

from an executive of plaintiff, who was also an executive of its predecessor in interest, of how

plaintiff had come to acquire the rights to the copyrights at issue.  See Conan Props. Int'l LLC v.

Ricardo Jove Sanchez, No. 17 CV 162, Declaration of Fredrik Malmberg, dated June 8, 2018,

Dkt. No. 30.  That account was internally consistent, moreover, and did not raise any facts that

suggested that the alleged transfer of ownership had been invalid.

   Even if these assignments were valid, the court is somewhat skeptical that

plaintiff now owns these copyrights.  It appears that the owners of the copyrights would remain

Josef and Lidor Cohen.  The unsworn declaration of Lidor Cohen states that the Cohens

transferred their ownership, interests, and rights in the copyrights to plaintiff.  (See Cohen Decl.

¶¶ 8–9.)  While unsworn declarations made under penalty of perjury are admissible evidence if

they comply with 28 U.S.C. § 1746, plaintiff must still demonstrate its ownership of the

copyright by a preponderance of the evidence.  I note in particular that the declaration contains

no specific details about when or how the assignment to plaintiff allegedly occurred.  (See id.)

13

Meanwhile, plaintiff's supplemental submission claims that the Cohens transferred their rights to plaintiff "by written Assignment Agreement," even though Cohen's declaration does not assert the existence of a written agreement.  (Supp. Mem. at 1.)  I therefore find that plaintiff has failed to meet its burden.  If Josef and Lidor Cohen really *did* own the copyrights in question, then they should have brought this action—not plaintiff.

3.  <u>Validity of Copyright</u>

Even assuming plaintiff has sufficiently established its ownership of these copyrights, it would still need to establish that the copyrights are valid.  Under 17 U.S.C. § 410(c) a certificate of registration from the United States Register of Copyrights "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c); <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 51 (2d Cir. 2003).  Nevertheless, a certificate of registration neither creates an irrebuttable presumption of validity nor mandates that the court's inquiry come to a halt.  All it does is shift the burden of proof going forward onto defendants.  <u>See</u> <u>Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.</u>, 342 F.3d 149, 166–67 (2d Cir. 2003).  "Furthermore, 'where other evidence in the record casts doubt on the question, validity will not be assumed.'"  <u>Id.</u> at 166 (quoting <u>Durham Indus. v. Tomy Corp.</u>, 630 F.2d 905, 908 (2d Cir. 1980)).  Thus, even where no defendant has appeared, the court may properly raise questions about the validity of a copyright based on other evidence in the record.  Here, the evidence in the record—namely, the lack of any true explanation in the complaint or motion for default judgment about what made the designs original—led me to question the validity of the copyrights and request additional briefing and submissions on this issue.  (<u>See</u> Order, dated Apr. 24, 2018.)

Plaintiff, in its supplemental submissions, extensively cites irrelevant case law regarding protection of photographs.  (Supp. Mem. at 4–8.)  These images are clearly not, however, original photographs.  By plaintiff's own admission, these designs are "graphic and computer-enhanced interpretations of famous New York building[s] and themes."  (Id. at 8.) These works clearly draw heavily on preexisting material—common images of famous New York City landmarks.  They thus appear to be either compilations or derivative works.[3]  From the pleadings, however, it is unclear whether that material it draws on is itself in the public domain or is otherwise subject to copyright protection.

Compilations and derivative works are eligible for copyright protection, 17 U.S.C. § 103(a), but they must still constitute original works of authorship.  Moreover, such protection extends only "to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b).  In addition, that protection "does not extend to any part of the work in which such material has been used unlawfully."  17 U.S.C. § 103(a).

Demonstrating originality is not a heavy burden.  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.  To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."  Feist, 499 U.S. at 345.  Nevertheless, originality is required for a copyright to be valid.  See id. at 346

---

[3] See 17 U.S.C. § 101 (defining "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship" and "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.").

("Originality is a constitutional requirement.").  The plaintiff must show that its works contain

"some substantial, not merely trivial, originality."  Durham, 630 F.2d at 910 (citing Chamberlin

v. Uris Sales Corp., 150 F.2d 512, 513 (2d Cir. 1945)).

Plaintiff claims that it "has developed elaborate designs of New York and

destinations nationwide, incorporat[ing] the beauty of the landmarks and scenery with fashion

edge in each and every design."  (Pl.'s Mem. at 1.)  Its pleadings and motion for default

judgment, however, say very little about what makes its designs original.  In its subsequent

briefing, plaintiff argues that:

> Plaintiff purchased the artworks from a graphic artist who created a
> substantial portion of Subject Design by graphical manipulation.
> The Subject Designs contain a combination of known historic
> buildings that are graphically represented in different shades,
> colors and arrangements that are evocative of themes in New York
> but cannot be identified as slavish copying or representation of
> historic building.  The elements of originality are evident in the
> color, shading, graffiti, roses, horse carriages, yellow cabs, and
> their overall arrangement of the Subject Design . . . .
>
> . . . The disputed underlying work here is not a blueprint,
> untouched photo of the Statue of Liberty or a structural floor plan.
> Instead, it is a visual work depicting Plaintiff's original graphic
> and computer-enhanced interpretations of famous New York
> building and themes.  Each of the copyrighted works incorporates
> original elements that are original and protectible [sic].  Based on
> the foregoing and the copyright registrations, Plaintiff has a prima
> facie evidence of the validity of its copyrights.

(Supp. Mem. at 6–8.)  This explanation is lacking.  Simply stating that elements of originality are

"evident" is not an argument, nor is the court simply required to accept plaintiff's claims of self-

evident originality without anything more.

Lidor Cohen's unsworn declaration goes a little further in terms of describing

what he feels makes TBO86 original (though he mistakenly refers to it as TBO41).  As he puts it,

"[TBO86] has a compilation of digitally manipulated images of the Statue of Liberty with

16

original elements of the lamp colorfully lighting the sky in the foreground and the digitally

manipulated images of [the] Chrysler Building, [the] Empire State Building and the New York

City landscape and skyline.  This image is not an exact representation of the historic buildings

but a digitally manipulated and original representation of the landscape."  (Cohen Decl. ¶ 5.)

       As a historical note, I would point out that Lady Liberty's lamp being illuminated

is not an original idea in visual art or design.  After all: the torch itself is lit, both as a matter of

sculpture and (at night) electricity.  The National Parks Service notes that the current

replacement torch, added to the statue in 1986, "is reflective of the sun's rays in daytime and

lighted by 16 floodlights at night."[4]  Representing the lamp lighting the foreground of the sky is

thus arguably simply a straightforward depiction of reality.  In addition, dramatic representations

of that torchlight have been pervasive in American visual culture[5] since long before plaintiff's

designs were created:

---

[4] See National Park Service, Statue of Liberty National Monument: Get the Facts, accessed Aug. 23, 2018, https://www.nps.gov/stli/planyourvisit/get-the-facts.htm.

[5] Such representations have also been pervasive in American written culture.  Among the most memorable is that of Emma Lazarus's *The New Colossus*, which described the torch's flame as "imprisoned lightning" as Lady Liberty lifts her lamp "beside the golden door."  Emma Lazarus, The New Colossus (1883), available at https://www.poetryfoundation.org/poems/46550/the-new-colossus.



*Figure 7: Vintage engraving, "Liberty Enlightening the World," dated 1850, available at https://www.gettyimages.com/detail/news-photo/liberty-enlightening-the-world-engraving-19th-century-from-news-photo/566415049#/liberty-enlightening-the-world-engraving-19th-century-from-la-y*



*Figure 8: Vintage postcard, date unknown, available at http://walkinnewyork.blogspot.com/2010/08/vintage-postcard-statue-of-liberty.html*



*Figure 9: Vintage postcard, "Statue of Liberty by night, New York City," dated 1902, found at https://digitalcollections.nypl.org/items/510d47e2-8e35-a3d9-e040-e00a18064a99.*

The pervasiveness of such representations of the torch suggests that this type of image is an unprotectable *scène à faire*.  Under the doctrine of *scènes à faire*, "similarities of incident or plot or scenes that 'necessarily result from the choice of a setting or situation'" are not considered to be original and protectable contributions.  Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 160 (E.D.N.Y. 2002) (Weinstein, J.) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986)); see also Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 102 (2d Cir. 2014) ("[T]he doctrine of 'scènes-à-faire' teaches that elements of a work that are 'indispensable, or at least standard, in the treatment of a given topic'—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection.") (quoting Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 979 (2d Cir. 1980)).  Placing

19

the Statue of Liberty in front of other famous buildings in the New York City skyline would also seem to be an unoriginal *scène à faire*.  Indeed, numerous other artworks, stock images, and souvenirs can be found which place Lady Liberty directly in front of the Empire State Building and/or the Chrysler Building:



**Figure 10: Souvenir, available at https://www.nycwebstore.com/3-25-round-new-york-city-model/**



**Figure 11: Stock image, available at https://www.alamy.com/stock-photo-usa-new-york-empire-state-building-chrysler-building-statue-of-liberty-10391129.html**



*Figure 12: Robert Holzach print, available at https://www.art.com/products/p1828642591-sa-i10945194/robert-holzach-new-york.htm?upi=F3QDL70*

21

This should not be altogether surprising; they are, after all, three of New York's most singularly iconic and beautiful landmarks.  But also, per the *scènes à faire* doctrine, the fact that the Statue of Liberty itself exists in relation to the skyline makes the choice to place it in front of other iconic parts of the skyline a standard, unoriginal, and therefore unprotectable result.[6]  Even if it is not as straightforward a *scène à faire* as a lighted torch, I cannot see how such a choice possesses even the minimal quantum of creativity required by <u>Feist</u>, or under Second Circuit precedents.  <u>See</u> <u>Matthew Bender & Co., Inc. v. West Publ'g Co.</u>, 158 F.3d 674, 682 (2d Cir. 1998) ("The creative spark is missing where . . . the author made obvious, garden-variety, or routine selections . . . . creativity inheres in making non-obvious choices from among more than a few options.").

Courts have previously rejected, moreover, the notion that public domain images of the Statue of Liberty can be copyrighted simply by rendering them in another format.  <u>See, e.g.</u>, <u>Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found.</u>, 926 F.2d 134, 138 (2d Cir. 1991) (noting that "the Statue is a generic mark"); <u>Past Pluto Prods. v. Dana</u>, 627 F. Supp. 1435, 1441 (S.D.N.Y. 1986) (finding that nobody "can copyright Statue of Liberty foam hats" as "a copyright claimant's production of a work of art in a different medium cannot by itself constitute the originality required for copyright protection.") (citing <u>L. Batlin & Son v. Snyder</u>, 536 F.2d 486, 491 (2d Cir. 1976)).  Carrying the same logic forward here, it seems far-fetched to believe

---

[6] For example, a Google Images search of "Statue of Liberty Skyline" turns up innumerable images of the Statue superimposed in front of various parts of the New York Skyline to which it has no natural geographic relationship.  <u>See, e.g.</u>, results at:
https://www.google.com/search?q=statue+of+liberty+skyline&safe=active&rlz=1C1CHBD_enU
S760US760&source=lnms&tbm=isch&sa=X&ved=0ahUKEwiy7aifiobdAhW-
IjQIHbnaA6sQ_AUICigB&biw=1164&bih=762.

that simply rendering the Statue of Liberty in front of different buildings than those it physically appears in front of would make it copyrightable.

As to Cohen's other claims, the mere assertion that an image has been "digitally manipulated" does not render it an original contribution.  The point here is not to deride digital manipulation of images, either by implying that the resulting artworks either require no skill to make or are unworthy of copyright protection.  Rather, it is still plaintiff's burden to show that its copyright is valid, and that means offering sufficient evidence of originality. Plaintiff has utterly failed to do so on the record before this court.  "Although the standard of originality is low, it is not without effect. A work must possess more than a *de minimis* quantum of creativity."  Earth Flag Ltd. v. Alamo Flag Co., 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001) (Scheindlin, J.).

In briefing the second element of copyright infringement (copying of constituent elements that are original), plaintiff also points to what it considers "original elements" in its designs.  These include: (1) the placement of roses and layout of buildings in TB041; (2) the "original compilation of the horse carriage, yellow cab, heart, graffiti and flowers, [and] sylized [sic] placement of 'New York'" in TBO75; and (3) the "graphic representation of the sky, colors, graphic image of the buildings, fragmented sky effect, and lighting, along with the placement of stylized 'New York.'" in TBO86.  (Supp. Mem., Ex. B.)

To be sure, courts have found specific layouts or graphic designs that contain otherwise public domain images to be copyrightable.  In such cases, however, plaintiffs have established that those layouts or designs were, in fact, original.[7]  See, e.g., Oriental Art Printing,

---

[7] I would note, for example, that many elements that would seem ostensibly to be part of the "original compilation" of TBO75 seem to be drawn from an image of Times Square similar to the one here found here: https://www.rockstargames.com/newswire/article/5401/marston-has-times-square-on-lockdown.html.  That this image (or a similar image of the landscape at that

Inc. v. Goldstar Printing Corp., 175 F. Supp. 2d 542, 548 (S.D.N.Y. 2001) ("[W]hile plaintiffs' photographs [of commonly served Chinese dishes] are not original, the overall design in which they are contained does contain the requisite originality to render it a copyrightable work. Plaintiffs did not copyright the photographs themselves, but a "graphic design" for menus in which they appear, which contains arrangements of dishes, and in some cases, associated artwork.") (internal citations and quotation marks omitted).  Thus, courts in this circuit have rejected the notion that taking a public domain image and placing it on a generic background is a sufficiently original design to create a valid copyright.  See, e.g., Earth Flag, 153 F. Supp. 2d at 354 ("The Earth Flag is nothing more than a public domain photograph transferred from the medium of paper to the medium of fabric. Even though reproduction in the new medium of fabric required some skill and vision, that does not render the Earth Flag protectable . . . Additionally, none of the other features of plaintiff's Earth Flag contain any original expression.

---

point in time) appears to be the basis for TBO75 can be seen, for example, in this detail comparison:




Possible source image detail      Detail of TBO75

The color of the fabric of the Earth Flag is not at all original because it merely corresponds to the dark blue backdrop of space in the NASA photograph.")   Similarly, the Second Circuit has affirmed that there is no copyright protection for a background component of a design when another design is placed on top of that background, and the background is copied from a public domain source.  See Folio Impressions v. Byer Cal., 937 F.2d 759, 763–64 (2d Cir. 1991).

I would also note that plaintiff's claim that it may enjoy copyright protection for placing the words "New York" over New York City-related scenes is clearly mistaken.  There is nothing whatsoever original about putting the name of a city (which is itself in the public domain and not copyrightable) on top of a public domain image of that city; this is, to put it mildly, an "obvious, garden-variety" choice.  Matthew Bender, 158 F.3d at 682.

For all of these reasons, I find that plaintiff has not met its burden of showing that its contributions to these designs were original contributions.  I therefore conclude that plaintiff does not possess a valid copyright in these designs.

4.  Copying of Constituent Elements That Are Original

If plaintiff *did* possess a valid copyright in one or more of these designs, it could only conceivably be in the particular selection and layout of otherwise public domain images.  It would thus be *at best* a thin copyright.  The Supreme Court has explained that where the only original contribution of a plaintiff to a compilation involves choices of selection and arrangement, copyright protection "may extend only to those components of a work that are original to the author," but that this protection is "thin."  Feist, 499 U.S. at 348–49; see also Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 136 (2d Cir. 2003) ("The [Supreme] Court cautioned, however, that the protection given is "thin," because the scope of the copyright "is limited to the particular selection or arrangement," and a "subsequent

25

[author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.") (quoting Feist, 499 U.S. at 349–51).  The Second Circuit has held that in such cases, courts should apply a "more discerning" standard in determining whether copying of protectable elements has in fact occurred.  See Folio Impressions, 937 F.2d at 765–66 ("Of course, the ordinary observer would compare the finished product that the fabric designs were intended to grace (women's dresses), and would be inclined to view the entire dress—consisting of protectible and unprotectible elements—as one whole.  Here, since only some of the design enjoys copyright protection, the observer's inspection must be more discerning.")

The Second Circuit has also recognized, to be sure, that "[t]here may arise visual-arts cases in which the selection, coordination, and arrangement of public domain elements is so aesthetically complex and sophisticated that the copyright is more than thin."  Tufenkian, 338 F.3d at 136 n.13 (internal quotation marks omitted).  For the reasons discussed above, however, this does not appear to be one of them.

Here, to support its claim that defendant copied its designs, plaintiff's supplemental submission relies on a side-by-side comparison chart.  (See Comparison Chart of Images from Exhibit A and C of the Complaint, annexed as Ex. B to Supp. Mem., Dkt. No. 19-2, at 1–2.)  In its submission, plaintiff argues that that the court's analysis is restricted to "whether, based upon a 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another."  (Supp. Mem. at 10 (quoting Ellis v. Diffie, 177 F.3d 503, 506 n.2 (6th Cir. 1999).)  "Without question," plaintiff argues, "the total concept and feel of True Rock's infringing products as a whole are substantially similar to the protectable elements of Sweet Gisele.  The substantially similar concepts, feel, theme, stylized

26

writing, placement of flowers, building and themes of the works cannot be ignored."  (Id.)

I am not persuaded, however, that the images are close enough to constitute extremely close copying of the protectable elements of plaintiff's designs, under the "more discerning" test endorsed by the Second Circuit in such cases.  There are, for one, visible differences: for example, the alleged infringing copy of TBO41 appears to blur or omit much of the background rose pattern and incorporates rhinestone decoration.  Similarly, the alleged infringing copy of TBO75 appears not to incorporate the "Kissing Sailor" photograph, and incorporates additional rhinestone decoration.  Finally, TBO86 appears to have quite different, arguably more vivid, coloring, and to be embroidered with rhinestones in place of the rays of the torchlight.

"Differences become particularly important where copyright protection is 'thin.'" Well-Made Toy Mfg., 210 F. Supp. 2d at 163.  Were plaintiffs' designs entitled to more than "thin" copyright protection, such differences might be considered trivial.  But the Second Circuit has made clear that where thin copyright protection is involved, "[o]nly very close copying would have taken whatever actually belonged to Plaintiff."  Zalewski, 754 F.3d at 107; see also Beaudin v. Ben and Jerry's Homemade, Inc., 95 F.3d 1, 2 (2d Cir. 1995) ("Where the quantum of originality is slight and the resulting copyright is "thin," infringement will be established only by very close copying because the majority of the work is unprotectable.")

More fundamentally, though, I am unable to say copying has occurred here because plaintiff has not met its burden of establishing that its designs include protectable elements.  I therefore cannot reasonably conclude that there has been copying of such elements, as opposed to the permissible taking and re-creation of the public domain imagery and ideas expressed in plaintiff's designs.  See Feist, 499 U.S. at 349 ("Notwithstanding a valid copyright,

a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature *the same* selection and arrangement.") (emphasis added); see also Rentemeester v. Nike, Inc., 883 F.3d 1111, 1120 (9th Cir. 2018) ("The individual elements that comprise a photograph can be viewed in the same way, as the equivalent of unprotectable 'facts' that anyone may use to create new works. A second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, 'so long as the competing work does not feature the same selection and arrangement' of those elements.") (quoting Feist, 499 U.S. at 349).

5. Relief Available

Finally, I note that the court cannot locate the alleged infringing shirts on Amazon.com. Plaintiff has submitted screenshots of the alleged infringing shirts dated May 4, 2017. (See Compl., Ex. C.) But it is not clear on this record that there is any ongoing copyright infringement occurring. Thus, if the court were to ultimately conclude that defendant infringed on a valid copyright, only damages for past conduct would be available to plaintiff.

**CONCLUSION**

In sum, I find that plaintiff has failed to meet its burden of establishing the core elements required for a finding that defendant is liable for copyright infringement: plaintiff's ownership of valid copyrights and defendant's copying of constituent elements that are original. I therefore respectfully recommend that plaintiff's motion be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Block and to my chambers, within fourteen (14)

days.  Failure to file objections within the specified time waives the right to appeal the district

court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,


_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge


Dated:  Brooklyn, New York
         September 4, 2018

29